**CONSUMER ATTORNEY ADVOCATES, INC.**
Patric A. Lester (SBN 220092)
pl@lesterlaw.com
5694 Mission Center Road, #358
San Diego, CA 92108
Telephone: (619) 665-3888
Fax: (314) 241-5777

**KEOGH LAW, LTD.**
Timothy J. Sostrin (IL 6290807 - *PHV pending*)
TSostrin@KeoghLaw.com
55 W. Monroe St., Suite 3390
Chicago, IL 60603
Telephone: (312) 726-1092
Fax: (312) 726-1093

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN LEUSCH, | Case No. '19CV0772 L   JLB |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT** |
| v. | |
| UBER TECHNOLOGIES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMES NOW, Plaintiff Ryan Leusch (hereinafter, "Leusch" or "Plaintiff") and sues Uber Technologies, (hereinafter, "Uber" or "Defendant"), alleging as follows:

### NATURE OF THE ACTION

1. Defendant placed hundreds of prerecorded robocalls to Plaintiff's cellular telephone number without his prior express consent in violation of the Telephone Consumer Protection Act, 47 U.S.C.§ 227 (hereinafter, "TCPA").

2. Plaintiff brings this action for actual damages, statutory damages, and injunctive relief as more fully described herein.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C., §1331 and 47 U.S.C. § 227 *et seq*.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5. Plaintiff Ryan Leusch is, and at all times mentioned herein was, an individual citizen of the state of California, residing in Murrieta, CA.

6. Defendant Uber Technologies, Inc. is a Delaware corporation that has its principal office in San Francisco, CA.

## THE TCPA

7. Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints about prerecorded robocalls.

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. Consumer complaints about this conduct have only increased since then. "If robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today and Defendant's conduct in this case is a good reason why.

**FACTUAL ALLEGATIONS**

10. At all times relevant herein, Plaintiff was the primary user of the telephone number xxx-xxx-1133, which was assigned to cellular telephone service ("Plaintiff's Cellphone").

11. Beginning in or around December 2018, Defendant began placing robocalls to Plaintiff's Cellphone via an automatic telephone dialing system that was programmed to deliver prerecorded messages to Plaintiff's Cellphone.

12. Some of the robocalls used a prerecorded voice to convey the following message:

> "Hi. This call is from UberEats. Your restaurant is receiving an order request, but it hasn't been accepted. The order can be accepted by clicking the blinking section on the ipad. If you are not ready to accept orders right now, please change the status from accepting orders to pause orders. For any issues, please contact our support team. Thank you."

13. Some of the robocalls used a prerecorded voice to convey the following message:

> "… Currently unavailable to our customers. Please switch on your ipad and login to the UberEats App. For any issues, please contact our support team. Thank you."

14. Plaintiff does not own or operate a restaurant.

15. Plaintiff has repeatedly informed Defendant that he does not own or operate a restaurant and that Defendant's robocalls are going to the wrong number.

16. Plaintiff has repeatedly asked Defendant to stop placing robocalls to his Cellphone, but Defendant has ignored Plaintiff's repeated requests.

17. Despite Plaintiff's repeated requests, Defendant has knowingly and willfully placed hundreds of these robocalls to Plaintiff's Cellphone.

18. Defendant's incessant robocalls repeatedly caused Plaintiff's voicemail to fill up completely, forcing Plaintiff to spend time clearing his voicemail (sometimes on a daily basis) to allow room for messages he actually wanted to receive.

19. Defendant's incessant robocalls have interfered with Plaintiff's ability to conduct business, causing frequent and never-ending interruptions to his work.

20. Plaintiff also made numerous attempts to "block" Defendant's robocalls, but Defendant's automatic telephone dialing system utilized caller ID spoofing, which prevented Plaintiff from successfully blocking the calls.

21. Specifically, the caller ID on Plaintiff's cellular telephone would display whatever telephone number Defendant wanted rather than the number that Defendant was actually calling from.

22. Over the course of hundreds of robocalls, Defendant caused dozens of unique telephone numbers to display on Plaintiff's caller ID.

23. Plaintiff blocked dozens of numbers but that did not prevent the robocalls because Defendant continued to utilize different numbers, thus evading Plaintiff's attempts to block the calls.

24. Defendant placed many of these robocalls to Plaintiff's Cellphone during the middle of the night (e.g. 1:00AM – 3:00AM), thereby interrupting Plaintiff's sleep.

25. In order to avoid the incessant interruption, Plaintiff often felt compelled to turn off his cellphone and smartwatch (which would also notify him of calls) completely.

26. As a result, Plaintiff missed several important communications from family members.

27. Defendant's robocalls harmed Plaintiff by invading his privacy.

28. Defendant's robocalls harmed Plaintiff by wasting his time.

29. Defendant's robocalls harmed Plaintiff by interrupting his sleep.

30. Defendant's robocalls harmed Plaintiff by causing him emotional distress.

## COUNT ONE
## CALLS MADE IN VIOLATION OF 47 U.S.C. § 227(b)(1)(A)

31. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

32. Defendant used an automatic telephone dialing system to make hundreds of

telephone calls using a prerecorded voice to Plaintiff's cellular telephone number in violation of 47 U.S.C. § 227(b)(1)(A).

33.  Defendant's violations were knowing and willful, in light of Plaintiff's repeated requests that Defendant cease its robocalls.

34.  As a result of Defendant's violations, Plaintiff is entitled to injunctive relief to enjoin further calls to his number. 47 U.S.C. § 227(b)(3).

35.  As a result of Defendant's violations, Plaintiff is entitled to the greater of actual or statutory damages. 47 U.S.C. § 227(b)(3);

36.  As a result of Defendant's knowing or willful violations, the Court may award up to $1,500 in statutory damages per call. 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for:

  a. An injunction requiring Defendant to cease further calls to Plaintiff's Cellphone;
  b. An award of statutory damages in the amount of $1,500.00 for each and every call, but in no event less than $500.00 per call;
  c. An award of actual damages;
  d. An award of Leusch's attorneys' fees, litigation expenses and costs of suit; and
  e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff demands trial by jury.

Date: April 26, 2019

**CONSUMER ATTORNEY ADVOCATES**

By: s/ Patric A. Lester
Patric A. Lester

**KEOGH LAW, LTD**
By: s/ Timothy J. Sostrin
Timothy J. Sostrin (PHV pending)
*Attorneys for Plaintiff*